(No. 22250.—)

LOUIS WITTE *et al.* Appellants, *vs.* WALTER W. McLAUGH-LIN, Director of Department of Agriculture, Appellee.

*Opinion filed February 23, 1934.*

PHILIP G. LISTEMAN, for appellants.

OTTO KERNER, Attorney General, and TRUMAN A. SNELL, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellants (hereinafter called the complainants) filed their amended bill in the Sangamon county circuit court against Walter W. McLaughlin, director of the Department of Agriculture of Illinois, the appellee, (hereinafter called the defendant,) challenging the constitutionality of ·an act of the legislature entitled, "An act in relation to the eradication of bovine tuberculosis and to repeal certain acts therein named," approved June 25, 1929, in force July 1, 1929. (Cahill's Stat. 1933, chap. 8, secs. 1-21, pars. 75 (31) to 75 (51), pp. 113-115; Smith's Stat. 1933, chap. 8, pars. 87-104c, pp. 145-148.) The defendant demurred to the amended bill. The demurrer was sustained and a decree entered dismissing the complainants' amended bill for want of equity. From that decree an appeal is prosecuted directly to this court, the trial judge certifying that a constitutional question is involved.

The amended bill alleged that the complainants were residents of Washington county, Illinois, residing upon a small farm, where they had been engaged for a number of years in farming; that on the fifth day of August, 1930, they were the owners of a herd of cattle which was maintained by them on such farm for dairy and breeding purposes and which cattle were at all times in an apparently healthy condition so far as the complainants were advised by competent veterinarians; that such cattle had never been infected with tuberculosis but took their food at regular intervals and showed no signs of any disease whatever; that these cattle bore calves at regular intervals, which offspring appeared at all times to be perfectly healthy; that on August 5, 1930, without any complaint having been

lodged against the complainants that the cattle were tubercular or affected with tuberculosis, or that anyone had reasonable grounds to believe such cattle were so infected, the agents of the Department of Agriculture presented themselves at the farm of the complainants and insisted that the cattle be tested for tuberculosis, informing the complainants that this test was to be made by injecting into the blood stream of the bovine cattle belonging to the complainants a serum containing tuberculin germs, which was to be administered by means of a hypodermic needle and was to be injected into the tail of each cow; that the agents of the defendant were refused such permission; that they then applied to the State's attorney of Washington county, who, together with the agents of the defendant, returned to the farm of the complainants and insisted that they submit their cattle to such test and furnish to the defendant's agents proper facilities for testing such cattle and necessary assistance in order that such tests could be made. The amended bill avers that the request was denied, and that subsequently the complainants were indicted by the grand jury of Washington county for the violation of the statute; that the agents of the defendant are threatening to, and unless prevented by an injunction will, require the complainants to submit their cattle to such test and to provide adequate facilities and necessary assistance therefor; that at no time did the agents of the defendant advise the complainants of the nature of the adequate facilities and necessary assistance which they would require or expect the complainants to furnish. The amended bill prayed that the Department of Agriculture and its various agents be restrained from attempting to enforce, or from enforcing, any of the provisions of the legislative act *supra*.

The defendant argues that the complainants have misstated what was said as to the method by which the tuberculin or diagnostic agent is injected into the body of the animal, stating that the tuberculin is not injected into

the blood stream but between the layers of the skin and in the caudal fold at the base of the tail; that neither the serum nor the tuberculin contains tuberculin germs but is a sterile product, absolutely harmless. While the discussion is interesting from a scientific point, yet for the purpose of this review we must take as true the allegations of the method to be pursued and the diagnostic agent and its contents purposed to be used, the demurrer having admitted the truth of the facts well pleaded. No complaint, however, is made by the amended bill that the purposed method of subjecting the animals to the test is harmful or injures the milk supply or that the ingredients of the serum are injurious to any animal vaccinated therewith.

It is very earnestly argued by the complainants that the provisions of section 2 of the act requiring that the owner of the cattle "shall provide necessary facilities for making tests and render such assistance as may be required by the department" attempt to delegate to the Department of Agriculture functions which under the constitution could only be exercised by the legislature. The amended bill does not allege that the complainants did not thoroughly comprehend what the term "facilities" or "assistance" meant as applied to the proposed testing of their cattle when requested from them by the department, nor does the bill allege that the defendants inquired of the department's agents what such requirements were, or that the department made any unusual, unreasonable or unwarranted requirements of them, either by way of "assistance" or "facilities." It is a matter of common knowledge that dairy cattle on farms are usually kept in pastures, lots and barns. The cattle may or may not be easy of access to an outsider. Cattle can ordinarily be driven into an enclosure much easier by the owner than by a stranger. There is much less likelihood of the cattle becoming nervous if the owner or the one customarily taking care of the cattle is present. The allegation of the amended bill goes into detail in the

method purported to be employed in the matter of the vaccination of the animals, so that it is clearly apparent that the "facility," if any is required, is an enclosure where the veterinarian may approach the animal and inject the serum into it. The "assistance" apparently required, if any, would be to drive the animals into an enclosure. Stock raisers and farmers, who are the classes of persons affected by the act, would have no difficulty in understanding the above statutory expression.

Although police regulations may invade the letter of the constitution, the exercise of the police power in laws enacted for the preservation of the public health is so necessary and important to the general welfare of society that reasonable rules and regulations that are not prohibited by the constitution may be declared and exercised within reasonable limits. Such reasonable rules and regulations are not only not violative of the constitution, but, on the contrary, are guaranteed by the generally declared purposes of individual government and the manifest purpose of the constitution.

The constitutionality of this statute in different forms of court proceedings has been before this court in two other cases decided at this term: *People* v. *Anderson, ante,* p. 289, and *People* v. *Huls, ante,* p. 412. No reasons are advanced in the case at bar against the constitutionality of the act other than what we have thoroughly considered and passed upon in the *Anderson* and *Huls cases, supra.* The statute is not violative of the provisions of the State or Federal constitution in respect to any of the charges made against it. Neither is the act an oppressive and unwarranted use of the police power of the State.

The decree of the circuit court is correct and is affirmed.

*Decree affirmed.*